Mr. Justice Robb
delivered the opinion of the Court:
This is an appeal from a decision of the Commissioner of Patents, dismissing the opposition of appellant, Johnson Edu-cator Eood Company, to the registration of the word “Educator” as a trademark for salted, smoked, pickled, and canned fish. Appellant had previously registered the same word as a •.trademark for crackers, biscuits, bread, and breakfast eereais, *108 and had built up an extensive trade in those products. The opposition is based upon the contention that the preparations of appellant are “of the same descriptive properties” as the fish products of appellee.
This is a statutory proceeding, and we must, of course, be governed by the provisions of the statute relating thereto. Section 4 (b) of the trademark act of February 20, 1905 (33 Stat. at L. 724, chap. 592, U. S. Comp. Stat. Supp. 1909, p. 1275), prohibits the registration of two marks “appropriated to merchandise of the same descriptive properties,” and sec. 7 of the same act permits a prior registrant or applicant to oppose the registration of a mark “appropriated to goods of the same descriptive properties” as his own. “We think two trademarks-may be said to be appropriated to merchandise of the same descriptive properties in the sense meant by the statute when the general and essential characteristics of the goods are the same. * * * The test is whether there is such a sameness in the distinguishing characteristics of the goods as to be likely to mislead the general public.” Phœnix Paint & Varnish Co. v. John T. Lewis & Bros. Co. 32 App. D. C. 285; Walter Baker & Co. v. Harrison, 32 App. D. C. 272.
Unless, therefore, there are no distinguishing characteristics-between the goods of the respective parties, we have no authority to interfere with the awaxd of registration to appellee. We think the case ruled by our decision in the Muralo Co. v. National Lead Co. ante, -. In that case the Múralo Company sought registration of a mark for kalsomine. The opposition was upon the ground that kalsomine was of the same descriptive-properties as white lead, to which the opposer’s mark applied. The court, speaking through Mr. Chief Shepard, said: “The-real question is whether the use of the figure of a Dutch boy on one package and that of a Dutchman on the other is calculated to mislead an ordinary person seeking to buy white lead,, into buying a package of kalsomine. Bearing in mind the essential differences between the two articles, we think it impossible that such should be the case. The purchaser has some definite use in view, and must know whether he wants white lead *109 to compound into paint, or for other purposes, or whether he wants kalsomine. * * * The fact that one intending to use oil paint for interior walls calls for white lead, but may be induced to use kalsomine instead, upon the representation that it is cheaper, and when put on the wall cannot be distinguished from oil paint by anyone but an expert, does not make a case of confusion in trade.”
In the present case it requires altogether too great a stretch of the imagination to conclude that anyone calling for breakfast food would accept salted codfish without knowing the difference. The general and essential characteristics of the two products are dissimilar; and while each is prepared for human consumption, no confusion such as the statute contemplates can possibly arise in the mind of the public if the two products are sold under the same mark.
The decision of the Commissioner is therefore affirmed, and the clerk will certify this opinion, as by law required.

Affirmed.

Pending an application to the Supreme Court of the United States for the allowance of a writ of certiorari, the judgment of this court was stayed, and its opinion withheld from the Commissioner of Patents.